# HENRY A. ORRICK, ET AL. *vs.* THE FIDELITY AND DEPOSIT COMPANY OF MARYLAND, TRUSTEE.

*Consolidation of Corporations—Power to Issue Bonds Under Mortgage Executed by a Constituent Corporation—Bona Fide Holder of Bonds Improperly Issued—Subrogation—Ex Parte Order Directing Trustee to Certify Bonds.*

When two corporations have been consolidated and, under the statute regulating the consolidation, the new company acquires the property, powers and liabilities of the constituent companies, the new consolidated company is not authorized to issue an obligation in the name of one of the former companies so as to carry with it the security of a specific mortgage executed by that company, which contained no provision authorizing future obligations to be issued by the consolidated company.

If a consolidated company issues bonds purporting to be entitled to the lien of a mortgage previously executed by one of

its constituent corporations, but which are in law not so enti-
tled, and applies the proceeds to the purchase of prop-
erty, having represented that the property will be conveyed to
a trustee to secure payment of bonds, the consolidated com-
pany cannot be heard to deny the validity of the bonds in
the hands of *bona fide* holders for value, and these holders are
entitled by way of subrogation to the benefit of the lien of
the deed of trust of the property made by the consolidated
company, to the extent to which the proceeds of the bonds
were used in payment for the property.

When the trustee under a mortgage executed to secure bonds
applies to a Court of Equity for its direction in the adminis-
tration of the trust, and that Court passes *ex parte* orders
merely on a petition authorizing the trustee to certify certain
bonds as being entitled to the lien of the mortgage, those
orders are not an adjudication that the bonds were properly
issued or that they are entitled to the lien of the mortgage.

A gas company executed a mortgage to a trustee of all of its
property to secure an issue of bonds, a part of which were
to be delivered forthwith to the company, a part were to be
used to take up underlying mortgages and liens on the prop-
erty, and a third part were to be thereafter issued to pay for
property that might be subsequently acquired for the uses
of the company. The mortgage prescribed the precise condi-
tions under which this third class of bonds should be issued,
but did not authorize their issue in the event of the consoli-
dation of the gas company with another corporation which
would put an end to the legal existence of the gas company.
Afterwards the gas company was consolidated with an electric
light company, and a new consolidated corporation formed.
It was held on a former appeal that the consolidated com-
pany had no power to issue bonds for property acquired by it
which would be entitled to the lien of the gas company's
mortgage. Before that decision was made, the consolidated
company had issued, and the trustee under the gas company's
mortgage had certified, certain bonds, the proceeds of which
were uesd to acquire additional property by the new com-
pany, as well as certain other bonds which were issued to
take up underlying liens. *Held,* that the trustee under the

gas company's mortgage should be directed to certify those bonds as being entitled to the lien of that mortgage which were issued by the consolidated company as the successor of the gas company to take up prior lien bonds, since to do so would be to complete the performance of covenants in that mortgage, and since, when the gas company's property was transferred to the consolidated company, the transfer was expressly made subject to existing liens, and that included the bonds to be issued thereafter which would be beneficial to all parties interested, by discharging prior liens.

*Held,* further, that the bonds issued by the consolidated company and certified by the trustee under the gas company's mortgage, the proceeds of which were applied to the acquisition of additional property to be used in its gas business, are not entitled to security of that mortgage, since the conditions prescribed for the issue of such bonds could not be complied with by the consolidated company after the gas company had ceased to exist, and that the *bona fide* holders of these bonds are not entitled to the lien of that mortgage.

*Held,* further, that the consolidated company is liable to the holders of such bonds in the same manner as if they were its own obligations.

*Decided April 27th, 1910.*

Appeal from the Circuit Court No. 2 of Baltimore City (DOBLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON, and URNER, JJ.

*Albert C. Ritchie* and *Stuart S. Janney,* for the appellants.

*Edgar H. Gans* and *Charles Markell,* for the Consol. Gas, Etc., Co. and for F. A. White, appellees.

*Henry W. Williams,* for the Fidelity and Deposit Co., appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The two appeals before us were taken from the same order and will be considered together. They bring the proceedings in which they were taken before us for the second time. The facts of the case were fully stated in our opinion on the former appeal which will be reported in 112 Md. 50, but in order to make clearer what we have now to say we again refer to some of the more important of them.

On April 1st, 1904, the Consolidated Gas Company of Baltimore City (hereinafter called the Gas Company) being the owner of certain property and franchises subject to two existing mortgages, one made by that company and the other by its predecessor in title, to secure respective issues of 5 per cent. and 6 per cent. bonds, made an additional mortgage deed of trust thereon to the Fidelity and Deposit Company of Maryland (hereinafter called the Fidelity Company). This last mortgage was made to secure 15,000 4½ per cent. coupon bonds for $1,000 each, to be from time to time executed by the Gas Company and delivered to the Fidelity Company as trustee, to be by it certified, and then to be applied to the extent of 2,515 bonds, to providing for immediate needs and outstanding certificates of indebtedness of the Gas Company * * * to the extent of 6,985 bonds, to taking up and retiring the outstanding prior lien bonds secured by the two underlying mortgages and, to the extent of the remaining 5,500 bonds, to the payment of 80 per cent. of the cost of such further property as the Gas Company might desire to thereafter acquire.

The mortgage contains among other things:

1. A provision that there should be no priority among the bonds to be issued under it but all of them should have the equal benefit of its security without reference to the date or order of their issue.

2. A covenant on the part of the Gas Company to pay or purchase and retire the outstanding prior lien bonds at or before their maturity.

3. A provision requiring the trustee to certify and deliver, to the order of the Gas Company, bonds to be issued under the mortgage in exchange for equal amounts in par value of all prior lien bonds that the  Gas Company should acquire and tender to it for that purpose, and to retain such prior lien bonds for cancellation.

4. A provision requiring the performance by officials of the Gas Company of certain conditions precedent to authorize the issue of bonds to be applied to the payment for after-acquired property.

5. A privilege to the holders of bonds to have them registered by the trustee as to the payment of principal.

The mortgage also provides that the certification, in accordance with its terms, by the trustee of any bond should be conclusive evidence of the fact that such bond had been duly issued under the mortgage and that its holder was entitled to the benefit of the trusts created by that instrument. It further provides that the bonds to be issued under and secured by it shall be substantially of the tenor and purport of the form set out in the body of the mortgage and shall be executed on behalf of the Gas Company by its president or vice-president and shall bear the seal of the company, and it contains no provision for their execution in any other manner or by other persons.

The mortgage was duly executed by the Gas Company and also by the Fidelity Company as trustee and placed upon record and the bonds were engraved and printed ready for execution.   After the bonds for the immediate use of the Gas Company and those to take up its outstanding certificates of indebtedness had been executed and issued, but before any others of the bonds had been executed or issued the Gas Company entered into a consolidation, under the general laws of Maryland, with the corporation designated in the proceedings in this case as the Power Company forming the Consolidated Gas Electric Light and Power Company of

Baltimore City (hereinafter called the Consolidated Company).

The agreement and certificate of consolidation, which are otherwise in the usual form, provide that upon the consolidation the property and franchises of the Gas Company, subject only to such liens thereon as existed prior to the consolidation shall pass to and vest in the Continental Trust Company as trustee under the two mortgages, made to it by the Power Company on February 14th and May the 15th, 1905, upon the terms and for the purposes of those instruments.

The Consolidated Company, when formed executed two conveyances purporting to convey the property and franchises which it had received in the process of consolidation from the Gas Company subject to the existing liens thereon, to the trustee under the Power Company's mortgages for the uses and purposes thereof. In these conveyances as well as in the articles of consolidation the Consolidated Company asserted and attempted to retain to itself the right to thereafter issue the unissued bonds provided for by the Gas Company's mortgage.

The original proceedings in the present case were instituted by the filing by the Fidelity Company of an *ex parte* petition in Circuit Court No. 2 of Baltimore City declaring that it entertained doubts as to its rights, duties and obligations as trustee under the Gas Company's mortgage, especially in reference to the certification of further bonds to be issued thereunder and asking to be permitted to execute its trusts under the direction and supervision of the Court. By an appropriate order the Court assumed jurisdiction of the trusts and their administration as prayed.

By subsequent orders the Court directed the trustee to certify and deliver, as having been duly executed under the mortgage and entitled to the security thereof, certain bonds in the orders mentioned which had been executed by the Consolidated Company as successor of the Gas Company and had

been issued to pay for property acquired by the Consolidated Company for use in connection with its gas business.

Another application for a similar order having ·been made in the case by the Consolidated Company, one Albert Diggs, being the holder of bonds which had been issued by the Gas Company under.its mortgage prior to the consolidation, intervened in the case by petition and objected to the authorization by the Court of the issue of any more bonds, under the Gas Company's mortgage, by the Consolidated Company, upon the ground among others that it had no power as successor of the Gas Company or otherwise to issue such bonds.    The Circuit Court passed an order on that application directing the bonds to be issued as prayed and from that order Diggs took the former appeal.

Upon that apppeal we reversed the order appealed from reviewing at length both the law and the facts of the case in our opinion.    We there distinguished between the further issue of bonds under the Gas Company's mortgage for refunding purposes and their issue for the future acquisition of property.    We held that for the former purpose there was jurisdiction in a Court of Equity to require their issue in performance of the covenants of the mortgage, but that for the latter purpose no more bonds could be issued because, first, the mortgage .contained no agreement to purchase further property and, secondly, it prescribed express conditions precedent to the issue of bonds for that purpose which it no longer was possible to perform.    ·We also held that the right to acquire prior lien bonds and have them exchanged, in the process of refunding, for those to be issued under the mortgage was one that might be exercised by a subsequent owner by consolidation or otherwise of the mortgaged property, and that such right might be regarded in equity as an incident of the ownership of the property so long as it remained subject to the mortgage.    We further held that there would be jurisdiction in a Court of Equity upon a proper application to it to enforce the performance of the agree-

ment contained in the mortgage to issue the bonds in ex-
change, in the process of refunding, for outstading prior
lien ones when presented for that purpose. We however held
the enforcement of the terms of the mortgage not to be an
incident of the Courts supervisory jurisdiction over the ad-
ministration of trusts and therefore not ordinarily invokable
in an *ex parte* proceeding such as the one then before us, but.
in order to avoid a multiplicity of suits we authorized the
Circuit Court to entertain an application for the enforce-
ment in the pending suit by such an amendment of the pro-
ceedings as to bring before the Court in person or by proper
representation the holders of subsequent liens upon the prop-
erty and afford them an opportunity to be heard. It was
said by us in that connection that the Court below, in the
event of directing the bonds to be issued, could either appoint
a trustee to execute them or direct it to be done by the Con-
solidated Company.

After the case went back to the Circuit Court Francis A.
White, as holder of five of the 548 bonds executed and issued
by the Consolidated Company after the consolidation for the
acquisition of additional property, intervened in the case by
leave of Court on behalf of himself and all other holders of
similar bonds. He asserted in his intervening petition that
he, having acquired the bonds in good faith, for value and
without notice of any infirmity in them, applied to the
Fidelity Company the trustee under the Gas Company's
mortgage to have them registered as to the payment of the
principal but that it refused his application assigning as a
reason for its refusal that since the decision of this Court on
the former appeal the validity of the bonds was doubtful,
and he prayed that the trustee might be required to register
the bonds.

The Continental Trust Company the trustee under the
Power Company's mortgage, and certain holders of bonds
thereby secured and also holders of some of both classes of
the preferred stock of the Consolidated Company were

brought or voluntarily came into the case and were made parties thereto. Notice was also given by publication under the direction of the Court to all other persons who desired to be heard in reference to the application for the certification of the $5,000 of bonds for refunding purposes or the registration of the $5,000 of Mr. White's bonds, to appear in the case by a named day. No one appeared in response to the notice.

The necessary parties having thus been made to procure a decision of the above mentioned questions, the Consolidated Company renewed its application for an order requiring the Fidelity Company as trustee under the Gas Company's mortgage to certify and deliver to the order of the Consolidated Company in exchange for five prior lien bonds for $1,000 each tendered to it, a like amount of bonds of the issue secured by the mortgage. There being at that time none of the last mentioned bonds in existence executed by the Gas Company the petition further asked the Court to direct the execution by the petitioner as successor of the Gas Company through its officers and over its corporate seal but in the name of the Gas Company, of the five bonds to be certified and delivered by the trustee.

Albert Diggs, in a new petition filed after the remanding of the case, and several of the holders of the preferred and prior lien preferred stock of the Consolidated Company and of mortgage bonds of the Power Company insisted upon the illegality of the bonds issued on behalf of the Gas Company after the consolidation and objected to the further issue of any more of such bonds for any purpose. Their objections rested mainly upon the alleged want of power in the Consolidated Company as successor of the Gas Company to make any such issue, and the further ground that as the whole property of the Gas Company was transferred to the trustee under the Power Company mortgage, for the purposes of that mortgage, at the time of the consolidation of the two companies, subject only to the liens then existing upon it,

such liens could not now be enlarged by the issue of additional bonds.

We do not regard those objections as well taken. In the first place it is not proposed to issue the additional bonds upon the mere power and authority of the Consolidated Company as successor to the Gas Company but upon the authority of the Court directing the completion of the performance of the covenants and undertakings of the mortgage. In the second place the expression "subject only to the existing liens thereon" used in the transfer of the Gas Company's property at the time of the consolidation must in order to receive a rational interpretation in view of the provisions of the mortgage itself and under the circumstances of the present case be construed to include the entire lien of the mortgage and the bonds issued and to be issued thereunder. If any authority were required for this view it would be found in the discussion of a similar situation by CHIEF JUSTICE WAITE in *Claflin* v. *South Carolina R. Co.,* 8 Fed. 118, and in the cases of *Murray* v. *Lardner,* 2 Wall. 110 and *Presidio Co.* v. *Noel-Young Bond Co.,* 212 U. S. 58.

The Court below after having heard together the questions raised by the several petitions in the case passed the order from which the present appeals were taken. That order directed the Fidelity Company as trustee under the Gas Company's mortgage to receive from the Consolidated Company the five prior lien bonds mentioned in its petition and in lieu thereof to certify and deliver five bonds of like amount as being entitled to the security of the Gas Company's mortgage, and it authorized the Consolidated Company as the successor of the Gas Company to execute the bonds so to be certified in the name and on behalf of the Gas Company, and it declared that such bonds when so executed and certified should be entitled to the same rights, priority and security of the mortgage as any of the bonds issued thereunder. That portion of the order will be affirmed.

The order further declared that the five bonds held by Francis A. White were valid bonds entitled to the same rights, priority and security of the Gas Company's mortgage as any of the bonds issued thereunder and directed the trustee to register them according to the prayer of Mr. White's petition. This latter portion of the order must be reversed.

We have no difficulty in agreeing with the learned Judge below as to the portion of the order which we have said must be affirmed, *first* for the reasons stated in our former opinion which need not be here repeated, and *secondly* for the very obvious reason that to retire the existing prior lien bonds which bear five or six per cent. interest and replace them by a new issue of precisely the same amount of bonds bearing only four and a half per cent. interest and maturing at a later date will be beneficial to all persons interested in the mortgaged property whether as subsequent lienors or owners of the equity of redemption.

We are unable to reach the conclusion that the five bonds held by Mr. White, which formed part of the five hundred and forty-eight bonds, issued by the Consolidated Company after the consolidation, for the acquisition of additional property, are entitled to the security of the Gas Company's mortgage. As we said in our former opinion by the terms of the mortgage such bonds could be issued only for the future acquisition of property by the Gas Company itself for its own corporate purposes and then only upon conditions precedent to be performed in part by the directors of that company and in part by an engineer selected by it. Such further acquisitions of property by that company and the performance of the conditions precedent requisite thereto were alike rendered impossible by the destruction of its corporate life in the process of consolidation.

Nor do we think that those bonds issued, as they were, by the Consolidated Company of its own volition after the Gas Company had gone out of existence can be regarded, even in the hands of *bona fide* holders for value, as part of the issue

authorized by the Gas Company's mortgage or entitled to the security furnished by it. Conceding the proposition, which may be regarded as well established by the decided cases, that the negotiable bond or note of a corporation executed within its power would be valid in the hands of a *bona fide* holder for value, even if it had been executed or issued by an abuse of the power, the fact remains that the bonds in question show upon their face that they were not issued by the Gas Company, whose obligations they profess to be, but by the Consolidated Company. However effectually the Consolidated Company, which executed and issued these bonds, may be estopped from denying their validity, the estoppel cannot be so extended as to afford to the bonds the shelter and protection of the mortgage made by the defunct Gas Company. If the bonds had been executed by the Gas Company a different case would have been presented, but we are not dealing with that situation now.

The mere fact that the Gas Company was one of the constituent companies which entered into the creation of the Consolidated Company and the consequent statutory devolution upon the latter company of the property, powers, debts and liabilities of the former did not of itself authorize or empower the latter company to issue an obligation in the name of the former one so as to relate back to and carry the security of a specific mortgage which contained no provision authorizing the obligation to be issued in that manner.

The present case is quite different from that of the mortgage made by the Power Company, the other one of the two constituent corporations, before the consolidation, which contained a clause looking to the possible consolidation of the mortgagor with some other corporation before all of the bonds authorized by it had been issued. That clause distinctly provided that in the event of the consolidation the successor corporation thereby created "may thereupon cause to be signed and may issue, either in its own name or in the name of the Light and Power Company, any or all of the

general mortgage bonds which shall not theretofore have been
signed by the Light and Power Company and delivered' to
the trustee; and the trustee upon the order of such successor
corporation in lieu of the Light and Power Company * * *
shall certify any and all bonds which shall have been executed
by the Light and Power Company or by such successor cor-
poration. All bonds so issued shall in all respects have the
same legal rank and security as though all of said bonds had
been actually issued by the Light and Power Company as of
the date hereof."' Under such a mortgage bonds issued by
the successor corporation by consolidation would answer to
the description of the debt intended to be secured by the in-
strument and would come plainly within its purview and
intention and the fact that a bond had been executed by the
successor corporation, would, if it bore the certificate of the
trustee in due form, neither constitute nor suggest any in-
firmity in it or impair its negotiability.

Nor do we think that the status of the five hundred and
forty-eight bonds under consideration can be regarded as
*res adjudicata* because the orders of the Circuit Court under
which they were issued were not appealed from. Those
orders were passed in a purely *ex parte* proceeding instituted
by the trustee for its protection and they were conclusive
only to the extent of that protection. The proceedings do
not fall within the class to which the principles relied on in
*Albert* v. *Hamilton,* 76 Md. 311, *Riley* v. *Bank,* 81 Md. 14,
*Willliams* v. *Snebly,* 92 Md. 9, are applicable. The scope
of the present proceeding at the time of the passage of those
orders was not such as to justify the application to them of
the principle here sought to be invoked.

The reasons which have constrained us to hold that Mr.
White's five bonds and the others of the class to which they
belong cannot be regarded as part of the issue secured by the
Gas Company's mortgage force us to the conclusion that
those bonds are not entitled to the privilege of registration
by the Fidelity Company as trustee under that mortgage.

It by no means follows from what we have said that the class of bonds of which we are now speaking are void instruments having no value whatever. Upon the plainest principles of estoppel the Consolidated Company, which executed and sold those bonds and applied their proceeds to the payment for property which it purchased and still retains and uses, cannot be heard to dispute their validity in the hands of *bona fide* holders for value. To all intents and purposes it is as fully bound to such holders for both the principal and interest of those bonds at their respective maturity as if it had executed and sold them as an original issue of its own obligations.

Furthermore the holders of those bonds, which were sold with the understanding and upon the representation that the property to be acquired with their proceeds was to be conveyed to the Continental Trust Company to secure their payment, are in equity entitled by way of subrogation to the benefit of the lien of the several deeds of trust of the property, which were in fact made by the Consolidated Company to the Continental Trust Company and others, to the extent to which the proceeds of the sale of the bonds were applied in payment for the property.

We will affirm the order appealed from to the extent already stated by us and reverse it in other respects and remand the case for further proceedings.

> *Order affirmed in part and reversed in part and case remanded for further proceedings.*